**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 20-cv-0322-WJM-MEH

RENÉ LIMA-MARÍN,

    Plaintiff,

v.

UNITED STATES OF AMERICA, and
THE GEO GROUP, INC.,

    Defendants.

---

**ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT UNDER RULE 12(b)(1) AND
GRANTING IN PART AND DENYING IN PART GEO'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT & JURY DEMAND**

---

Plaintiff René Lima-Marín brings this action against Defendants United States of America ("Government") and The Geo Group, Inc. ("GEO") (jointly, "Defendants"). (ECF No. 64.)

This matter is before the Court on the "United States' Motion to Dismiss the Second Amended Complaint Under Rule 12(b)(1)" ("Government's Motion"), filed on August 6, 2020. (ECF No. 69.) Also before the Court is "Defendant GEO's Motion to Dismiss Plaintiff's Second Amended Complaint & Jury Demand (Doc. 64)" ("GEO's Motion"), filed on August 4, 2020. (ECF No. 66.)

For the reasons explained below, the Government's Motion is granted, and the GEO's Motion is granted in part and denied in part.

## I. BACKGROUND

The following factual summary is drawn from Plaintiff's Second Amended Complaint & Jury Demand ("Second Amended Complaint") (ECF No. 64), except where otherwise noted. The Court assumes the allegations contained in the Second Amended Complaint to be true for the purpose of deciding the Motion. *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007); and Standard of Review discussion, *infra* at Part II.

From May 2017 to March 2018, United States Immigration and Customs Enforcement ("ICE") held Plaintiff, a Cuban citizen, in civil custody at the Aurora Detention Facility ("ADF"). (¶¶ 5, 19, 25–26.)[1] GEO operates and manages the ADF pursuant to a contract with ICE. (¶¶ 2, 4–5, 23, 26.) Although GEO manages the ADF on a day-to-day basis, ICE retains oversight authority over GEO. (¶¶ 32, 43.)

On February 6, 2018, Plaintiff slipped and fell, "striking his face on the steel edge of a toilet in his cell with such force that he had an imprint of the toilet on his cheek when he picked himself back up." (¶¶ 6, 45–46.) He immediately alerted GEO staff of his fall. (¶ 47.) "After what felt like an excruciating amount of time," GEO staff escorted him to the medical unit, where nurses gave him Ibuprofen. (¶¶ 7, 47–50.) After more than an hour, GEO staff transported Plaintiff in full shackles to the hospital, where physicians found that Plaintiff had fractured multiple bones in his face, potentially causing nerve damage. (¶¶ 7, 51–54.) The hospital physician prescribed Plaintiff

---

[1] Citations to (¶ __), without more, are references to the Second Amended Complaint. (ECF No. 64.)

oxycodone and informed him that he needed surgery "in the next week or two" if Plaintiff wanted to "avoid the risk of permanent impairment to his face." (¶¶ 7, 57–58.)

On February 7, 2018, GEO staff transported Plaintiff back to ADF. (¶¶ 8, 59.) Upon his return, "GEO staff threw [Plaintiff] into a holding cell and told him that he could not go back to his housing until the detention center doctor, Dr. Jeffrey Peterson (a [GEO employee]), evaluated him." (¶ 60.) After waiting hours for Dr. Peterson to arrive, GEO staff took Plaintiff—at his request—back to his cell. (¶¶ 62–63.)

Over the coming days, the GEO medical staff "refused to fill the prescription for his pain that the hospital physicians had written" and instead provided Plaintiff "either a weaker and ineffective alternative medication (a couple Ibuprofen) or denied him any medication at all." (¶¶ 8, 65–67, 85–86.) GEO staff never took Plaintiff back to the hospital for surgery. (¶¶ 8, 87.) As a result, Plaintiff's bones began to heal incorrectly and "[h]e experienced substantial pain, swelling in his temple, troubling numbness in his face, difficulties chewing on the side of impact, and unbearable headaches." (¶ 9.)

On March 15, 2018, over a month after Plaintiff's fall, GEO staff transported Plaintiff to an eye doctor, who informed Plaintiff that to perform the surgery at that point, a doctor would need to re-fracture the bones in Plaintiff's face to re-align them. (¶¶ 10, 92–93.) Nonetheless, "despite the medical necessity of such a surgery, GEO, upon information and belief, did not request authorization from ICE for [the surgery], and [Plaintiff] was not taken to receive the necessary surgery." (¶ 94.)

On March 26, 2018, Plaintiff was released from ADF custody. (¶ 11.)

Plaintiff initiated this action on February 6, 2020 and filed the Second Amended Complaint on July 22, 2020. (ECF Nos. 1, 64.) In the Second Amended Complaint,

3

Plaintiff asserts the following claims: (1) a claim for negligent hiring, training and supervision against the Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674 ("Claim One") (¶¶ 101–08); (2) a claim for cruel, inhuman, and degrading treatment against GEO under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350 ("Claim Two") (¶¶ 109–18); and (3) a negligence claim against GEO under Colorado state law ("Claim Three") (¶¶ 119–27).

GEO and the Government and filed their motions to dismiss on August 4 and August 6, 2020, respectively. (ECF Nos. 64, 69.) Plaintiff responded to the motions on August 25 and August 27, 2020, respectively. (ECF Nos. 78, 79.) GEO replied on September 8, 2020 (ECF No. 80), and the Government replied on September 10, 2020 (ECF No. 81).

On October 30, 2020, United States Magistrate Judge Michael E. Hegarty stayed all discovery deadlines pending resolution of the Government's Motion to Dismiss. (ECF No. 82.)

## II.  STANDARD OF REVIEW

**A.     Federal Rule of Civil Procedure 12(b)(1)**

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts must be construed strictly. *See F&S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." A Rule 12(b)(1) motion to

4

dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). A Rule 12(b)(1) motion may take one of two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Conversely, when reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *See id.* A court has wide discretion to allow affidavits, other documents, and may conduct a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). *See id.* Because this case involves a facial attack, the Court will presume the truth of the allegations of the Second Amended Complaint.

**B.   Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." A "court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. Thus, in ruling on a motion to dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains

5

'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) ("[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint.").

Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS

**A.    The Government's Motion**

Plaintiff alleges that although the law "allows the federal government to contract with private entities to carry out certain government functions," the law "does not allow the federal government to fully delegate its constitutional duty of care to those in custody." (¶¶ 103–04.) Plaintiff brings a claim for negligent hiring, training, and

6

supervision against the Government under the FTCA, arguing that the Government has a "non-discretionary" duty to "prevent its employees and agents, including private contractors and contracting staff, from causing harm to a third party," and that "ICE breached its duty by failing to ensure safe and humane conditions at ADF." (¶¶ 105–06.)

The Government moves to dismiss Claim One under Rule 12(b)(1), arguing that the United States is immune from suit under on the discretionary-function exception to the FTCA. (ECF No. 69 at 5–9.)

1. The FTCA

Absent a congressional waiver of immunity, the United States is immune from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a "limited waiver of sovereign immunity [that] allows private parties to bring civil suits against the United States for personal injury or death caused by the negligence or wrongful conduct of government employees within the scope of employment." *Ball v. United States*, 967 F.3d 1072, 1075 (10th Cir. 2020) (citing 28 U.S.C. § 1346(b)(1)). However, the waiver of sovereign immunity

> is limited by the discretionary function exception which states that the waiver of immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a *discretionary function or duty* on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

*Kiehn v. United States*, 984 F.2d 1100, 1102 (10th Cir. 1993) (emphasis in original) (quoting 28 U.S.C. § 2680(a)); *see also United States v. S.A. Empresa de Viacao Area Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984) (recognizing that the discretionary-function exception "marks the boundary between Congress' willingness to

7

impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals").

To determine whether the discretionary function exception applies, courts employ the two-party inquiry first set forth in *Berkovitz v. United States*, 486 U.S. 531 (1988). First, a court considers "whether the action is a matter of choice for the acting employee." *Id.* at 536. If "the challenged conduct 'involves an element of judgment or choice,' . . . it is discretionary and falls within the language of the exception." *Ball*, 967 F.3d at 1076 (quoting *Kiehn*, 984 F.2d at 1102). By contrast, if the conduct "involves a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow," then "the exception does not apply." *Id.* (quotations omitted). A plaintiff bears the burden to "present evidence of a discretion-restraining regulation or policy." *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008).

Second, to the extent a court has determined that the challenged conduct was discretionary, a court next considers whether "whether that judgment is the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. In particular, discretionary decisions "grounded in the social, economic, or political goals" and protected and a complaint must be dismissed unless a plaintiff "allege[s] facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 315, 323–25 (1991). "When established governmental policy . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.*; *Kiehn*, 984 F.2d at 1105 (courts "will not assume a nonpolicy decision unless the record shows something

8

to the contrary").

The focus of the inquiry into the second *Berkovitz* factor "is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Ball*, 967 F.3d at 1076; *Sydnes*, 523 F.3d at 1185 (instead of "ask[ing] whether policy analysis is the *actual* reason for the decision in question," a court analyzes "categorically (rather than case specifically) whether the kind of conduct at issue can be based on policy concerns." (emphasis in original) (internal citations omitted)).

2.  Whether the Challenged Conduct is Discretionary

The Government argues that Plaintiff has failed to meet his burden to establish evidence of a discretion-constraining regulation or policy. (ECF No. 69 at 6–7.) Although Plaintiff alleges that ICE has a "non-discretionary duty" to prevent harm to detainees by "upholding and honoring the laws of the United States, including the right to adequate medical care under the U.S. Constitution" (¶ 105), the Government argues that the first *Berkovitz* prong is nonetheless satisfied because Plaintiff "fails to identify a specific rule that controls or constrains the manner in which ICE oversees contract-detention facilities" (ECF No. 69 at 7). In response, Plaintiff cites the Fifth and Eighth Amendments for the proposition that the Government has an "unambiguous constitutional duty to protect [him] from harm, and to provide him with adequate care and protection." (ECF No. 79 at 10.)

The Tenth Circuit, like most other circuits, has held that conduct is not discretionary when it "exceeds constitutional bounds." *Martinez v. United States*, 822 F. App'x 671, 676 (10th Cir. 2020); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir.

9

2016) (collecting cases); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (explaining that "[f]ederal officials do not possess discretion to violate constitutional rights" (quotations omitted)).

Plaintiff has not, however, plausibly alleged that the Government violated Plaintiff's constitutional rights.[2] Plaintiff's sole claim against the Government is for "negligent hiring, training and supervision." (¶¶ 101–08.) Plaintiff's allegations that ICE negligently failed to supervise GEO do not implicate the Fifth, Fourteenth, and Eighth Amendments because these constitutional provisions do not apply to merely negligent conduct. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (recognizing "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process"); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (recognizing that the Fourteenth Amendment Due Process Clause does not apply to negligent acts); *Farmer v. Brennan*, 511 U.S. 825 (1994) (recognizing that Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety" (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

Because Plaintiff has not plausibly alleged that ICE's conduct violated the Constitution or any other specific statute, regulation, or policy, he has failed to establish that the ICE's supervision of GEO was non-discretionary. *See Martinez*, 822 F. App'x at 680 (finding decision was discretionary because plaintiff failed to establish that law enforcement's conduct violated its handbook or the Constitution); *Sydnes*, 523 F.3d at

---

[2] The Eighth Amendment does not apply to civil immigration detainees. *See Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010); *DeBoe v. Du Bois*, 503 F. App'x 85, 87 (2d Cir. 2012) ("DeBoe's status as an alien detainee means that his claims against the defendants arise under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment's prohibition of cruel and unusual punishment.").

1185 (recognizing that the plaintiff bears the burden to present evidence of a discretion-constraining regulation).

      3.    <u>Whether the Challenged Conduct is Susceptible to Policy Analysis</u>

Because Plaintiff has failed to show that a specific constitutional provision, policy, statute, or regulation required ICE to take the action suggested by Plaintiff, the Court advances to the second *Berkovitz* prong, *i.e.*, determining whether ICE's level of supervision over GEO facilities is the type of judgment that the discretionary function was designed to shield.

The Government argues that "Plaintiff cannot show ICE's challenged conduct could not require 'the exercise of judgment based on considerations of public policy.'" (ECF No. 69 at 7 (quoting *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008)).) In response, Plaintiff argues that "[t]here exists no public policy that would allow for the provision of inadequate medical care when the Constitution requires adequate medical care." (ECF No. 79 at 11.)

Although Plaintiff attempts to recast the inquiry as a decision about whether to allow inadequate medical care, the Court finds that the proper inquiry is whether ICE exercised its regulatory authority in determining the extent to which it would supervise the GEO facilities. As to this question, the Court easily finds that this conduct is susceptible to policy analysis. *See Varig Airlines*, 467 U.S. at 819–20 (recognizing that an agency is "exercising discretionary regulatory authority of the most basic kind" when it "determines the extent to which it will supervise the safety procedures private individuals"); *Kirchmann v. United States*, 8 F.3d 1273, 1276 (8th Cir. 1993) ("Where no statute or regulation controls the government's monitoring of a contractor's work, the

11

extent of monitoring required or actually accomplished is necessarily a question of judgment, or discretion, for the government.").

Courts have routinely concluded that agencies' decisions regarding the proper extent of oversight or supervision concern policy judgments. *See, e.g.*, *Varig Airlines*, 467 U.S. at 820 (recognizing Federal Aviation Administration's "spot-checking" of manufacturers' compliance with airline safety standards involved policy judgments); *Domme v. United States*, 61 F.3d 787, 793 (10th Cir. 1995) (recognizing that Department of Energy's supervision of laboratories operated by private entity involved balancing of policy considerations); *Guile v. United States*, 422 F.3d 221, 230–31 (5th Cir. 2005) (concluding that Army's decision to hire health care organization to provide services to retired servicemembers and its decisions relating to the degree of oversight are "inherently a discretionary function" that involves policy based decisions); *Kirchmann*, 8 F.3d at 1277 (recognizing that the Air Force's oversight of construction of missile facility involved policy considerations).

Plaintiff argues that these cases are distinguishable from the present scenario because the governmental power to incarcerate involves a more serious duty and responsibility to provide care to those within its custody. (ECF No. 79 at 11.) However, Plaintiff cites no cases holding that this distinction rebuts the presumption that the Government's actions and decisions are grounded in policy. *See Kiehn,* 984 F.2d at 1108 n.12. The Court therefore finds that ICE's decisions regarding its delegation of inmate care to GEO and oversight of GEO involved public policy objectives, such as balancing detainee safety with facility needs and resource allocation.

Accordingly, the discretionary-function exception applies, and the Government is

immune from liability under FTCA.  The Court therefore lacks subject matter jurisdiction over this claim.  *See Kiehn*, 984 F.2d at 1106 (recognizing that a court lacks jurisdiction over claims that fall within the discretionary function exemption of the FTCA).  Thus, Plaintiff's FTCA claim will be dismissed without prejudice.

**B.     GEO's Motion**

      1.     ATS Claim

Plaintiff brings a claim under the ATS, alleging that "Defendant GEO subjected [him] to cruel, inhuman, and degrading treatment" by its "withholding medical care" and providing "inadequate medical care" in violation of an "universally accepted, and obligatory norm of international law and the law of nations."  (¶¶ 113, 116.)

An ATS claim only applies when: (1) an alien sues, (2) for a tort, (3) that was committed in violation of the "law of nations" or a treaty of the United States.  *Kyler v. Montezuma Cnty.*, 2000 WL 93996, at *1 (10th Cir. Jan 28, 2000).  The first two requirements are plainly satisfied here as Plaintiff is a Cuban citizen who has alleged that GEO acted negligently.  The critical disputed issue is whether Plaintiff has plausibly pled a violation of international law.[3]

The Supreme Court has clarified that not every potential violation of international law gives rise to a ATS claim.  Instead, in *Sosa v. Alvarez-Machain*, 542 U.S. 692

---

[3] The Court recognizes that there is also an unresolved question about whether the ATS applies to suits against domestic corporations.  *Compare Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 149 (2d Cir. 2010), *aff'd on other grounds*, 569 U.S. 108 (2013) (determining that the ATS "does not provide subject matter jurisdiction over claims against corporations") *with Flomo v. Firestone Nat'l Rubber Co., LLC*, 643 F.3d 1013, 1021 (7th Cir. 2011) (determining that corporate liability is possible under the ATS).  Nonetheless, because GEO's Motion is more easily resolved on the question about whether Plaintiff has plausibly pled a violation of international law, the Court will assume *arguendo*, for purposes GEO's Motion only, that corporate liability is possible under the ATS.

(2004), the Supreme Court relied on *Blackstone's Commentaries on the Laws of England* (1769) and found that at the time the ATS was enacted, only three actions were generally recognized as infractions of the law of nations: "violation of safe conducts, infringements of the rights of ambassadors, and piracy." *Id.* at 724. Although determining that "the door is still ajar" to a "narrow class of international norms today" that would satisfy the ATS, the Supreme Court cautioned courts to engage in "vigilant doorkeeping" and to "require any claim based on the present-day law of nations to rest on a norm of international character accepted by the civilized world and defined with a specificity comparable to features of the 18th-century paradigms we have recognized." *Id.* at 725, 729; *see also Taveras v. Taveraz*, 477 F.3d 767, 771 (6th Cir. 2007) (recognizing that although the "ATS holds great potential to bring justice to certain serious violations of human, civil, and environmental rights in a federal forum," the statute "by no means[ ] supplies jurisdiction over every wrong committed against an alien").

GEO argues that Plaintiff has failed to allege conduct that violates an international norm that is "specific, universal and obligatory" so as to state a claim under the ATS. (ECF No. 66 at 9.) It contends that "[m]any factors, including but not limited to varying laws, cultural norms, socio-economics, health care delivery systems, and availability of medical training, impact the standard of medical care and there is no universally-accepted international standard." (*Id.* at 9–10.)

In response, Plaintiff cites the Convention Against Torture or Other Cruel, Inhuman or Degrading Treatment or Punishment (the "Convention Against Torture") for the prohibition on cruel, inhuman, and degrading treatment is a norm of international law

14

and the law of nations.  (ECF No. 78 at 7 (citing Convention Against Torture, Dec. 10, 1984, S. Treaty Doc. No. 100–200 (1988), 1465 U.N.T.S. 85).)  He further argues that "[b]oth international and U.S. courts have held that inadequate medical treatment can be evidence of cruel, degrading, and inhuman treatment" and that "[i]nternational law protects the rights to health, including for detained persons."  (ECF No. 78 at 9.)

The Court finds that Plaintiff has failed to allege a violation of an international norm or law that is sufficiently definite to state a claim under the ATS.  The Convention Against Torture does not set forth specific requirements about when purportedly inadequate medical care rises to the level of constituting cruel, inhuman, or degrading treatment.[4]  The Court is likewise unaware of any federal court that has recognized that claims relating to inadequate medical care alone give rise to ATS liability.  *See Graziani v. Pugh*, 2012 WL 2711501, at *3 (N.D. Ohio July 9, 2012) (dismissing ATS claim in prisoner case where plaintiff's complaint "is based upon what appears to be medical malpractice, not a violation of international law"); *Guzman v. Wells*, 2010 WL 4941485, at *4 n.7 (S.D. Ga. Oct. 26, 2010) (finding claims of inadequate medical care and breach of contract do not fit within the "very limited set of claims" arising under "the law of nations" that would give rise to an ATS claim); *cf. Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 187 (2d Cir. 2009) (finding ATS jurisdiction over claim for a violation of the norm of

---

[4] As Plaintiff points out, the United States ratified the Convention Against Torture with a reservation that defines cruel, inhuman, or degrading treatment or punishment as conduct prohibited by the U.S. Constitution's Fifth, Eighth, and Fourteenth Amendments.  (ECF No. 78 at 8 (citation omitted).)  However, Plaintiff has not alleged that GEO intentionally violated Plaintiff's constitutional rights.  Instead, Plaintiff's allegations against GEO stem from its purported negligence, which, as explained in Part III.A.2, are insufficient to give rise to violations under the Constitution.

15

customary international law prohibiting involuntary medical experimentation on human subjects without their knowledge or consent).

While the Court is open to the possibility that inadequate medical care may constitute cruel, degrading, and inhuman treatment in certain circumstances, Plaintiff has not plausibly alleged that the facts of this case meet that standard. After all, Plaintiff's allegations demonstrate that GEO staff took him to the hospital the same day as his injury (¶ 52) and ensured that various medical professionals saw him (¶¶ 54, 75, 92). Although Plaintiff alleges that he did not receive his prescribed medications or a necessary surgery, he does not allege that GEO's *intentionally* deprived him of adequate medical care. This case is a far cry from the international cases cited by Plaintiff that deal with inadequate medical care or other cases in which the ATS has been held to apply. *See, e.g.*, *Al Shimari v. CACI Premier Tech., Inc.*, 263 F. Supp. 3d 595, 602–04 (E.D. Va. 2017) (finding cruel, inhuman, and degrading treatment was actionable under ATS within context of prisoner interrogations involving torture at Abu Ghraib); *Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1164, 1181 (C.D. Cal. 2005) (recognizing customary international law norm against cruel, inhuman, and degrading treatment in case involving bombing of Colombian village).

Accordingly, because Plaintiff has failed to plausibly state a claim under the ATS, this claim will be dismissed without prejudice.

2. <u>Negligence Claim</u>

Plaintiff alleges that he "was dependent on and under the control of [GEO] and its staff, employees, and agents," and had a special relationship with GEO such that "GEO had a duty to exercise reasonable care in protecting [Plaintiff's] health." (¶¶ 120–21.)

Plaintiff contends that GEO employees "grossly breached that duty" by, among other things, failing to provide timely or adequate medical care to Plaintiff, failing to properly administer Plaintiff's medication, and failing to request authorization for his medically necessary treatments, and that GEO is vicariously liable for its agent's actions and omissions.  (¶¶ 122–24, 127.)

GEO argues that "Plaintiff's failure to identify the medical staff that purportedly provided negligent medical care, and allegations as to how they breached an applicable standard is care, is fatal to his claim." (ECF No. 66 at 15.)  The Court disagrees.[5]

Plaintiff has plausibly alleged that GEO and its agents had a duty to provide him reasonable medical care and breached that duty after his injury on February 6, 2018. Although Plaintiff does not identify the specific nurses and staff members responsible for his purportedly inadequate care, he specifies the specific action (and inaction) which he alleges constitutes GEO's inadequate medical care.[6]  (*See, e.g.*, ¶ 51 (he was forced to wait for medical care after his accident on February 6, 2018), ¶¶ 60–63 (he did not receive timely medical care on February 7, 2018), ¶¶ 65–68, 85–86 (he was not given prescribed medications in the weeks that followed his accident); ¶¶ 87, 91–94 (GEO failed to request ICE authorization for his surgery).)  These pleadings are sufficient to survive a motion to dismiss.  Plaintiff should be given the opportunity to conduct

---

[5] GEO cites *Grassi v. Corrections Corporation of America*, 354 F. App'x 329 (10th Cir. 2009) for the proposition that Plaintiff's failure to identify the nurses responsible for his alleged mistreatment requires dismissal.  354 F. App'x at 333.  This case is distinguishable, however, because it was decided on summary judgment.

[6] In his response, Plaintiff recognizes that the corporate practice of medicine doctrine shields corporations from vicarious liability for the negligent acts of physician employees.  (ECF No. 78 at 14 (citing *Grassi*, 354 F. App'x at 333).)  He argues, however, that his case involves "the failure of GEO staff, not a physician and not Dr. Peterson, to provide adequate medical care." (*Id.*)

discovery to learn the identity of the specific individuals responsible for his allegedly inadequate medical care and substantiate his allegations.  However, at summary judgment or trial, Plaintiff must be prepared to state and prove with greater specificity how GEO's medical care fell short of what was legally required.

## IV.  CONCLUSION

For the reasons set for above, the Court ORDERS as follows:

1. Defendant United States' Motion to Dismiss the Second Amended Complaint Under Rule 12(b)(1) (ECF No. 69) is GRANTED;

2. Defendant GEO's Motion to Dismiss Plaintiff's Second Amended Complaint & Jury Demand (ECF No. 66) is GRANTED IN PART AND DENIED IN PART;

3. Claims One and Two of the Second Amended Complaint (ECF No. 64) are DISMISSED WITHOUT PREJUDICE;

4. The stay on discovery pending resolution of the Motion to Dismiss (ECF No. 82) is LIFTED; and

5. The parties are DIRECTED to jointly contact the chambers of Magistrate Judge Michael E. Hegarty's by no later than **February 11, 2021** to set a Status Conference, or such other proceeding as Judge Hegarty deems appropriate to move this action forward.

Dated this 9th day of February, 2021.

BY THE COURT:

_____
William J. Martinez
United States District Judge